Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/18/2020 08:25 AM CST

State of Nebraska, appellant, v.
Deborah S. Archer, appellee.

State of Nebraska, appellant, v.
Cory L. Russell, appellee.

___ N.W.2d ___

Filed September 25, 2020.    Nos. S-19-802, S-19-803.

1. **Judgments: Appeal and Error.** When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
2. **Criminal Law: Preliminary Hearings: Probable Cause.** The purpose of a preliminary hearing is to ascertain whether a crime has been committed and whether there is probable cause to believe the accused committed it.
3. **Constitutional Law: Criminal Law: Preliminary Hearings.** A preliminary hearing is not a criminal prosecution or trial within the meaning of the Nebraska Constitution. Nor is it a trial of the person charged in regard to his or her guilt or innocence.
4. **Criminal Law: Preliminary Hearings: Probable Cause.** If after a preliminary hearing the court finds that a crime has been committed and there is probable cause to show that the accused committed it, the effect of the hearing is to hold the accused for trial.

Appeals from the District Court for Washington County: John E. Samson, Judge. Exceptions overruled.

M. Scott Vander Schaaf, Washington County Attorney, for appellant.

Mallory N. Hughes, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

The State of Nebraska seeks appellate review of the district court's dismissal of charges filed against Deborah S. Archer and Cory L. Russell. The Nebraska Court of Appeals granted leave to appeal, and we moved this case to our docket. We overrule the State's exceptions.

## BACKGROUND

Archer owned DJ's Vapes, located in Herman, Washington County, Nebraska. Russell was employed by Archer at DJ's Vapes. Archer and Russell were arrested in December 2017, following an investigation by local law enforcement into whether DJ's Vapes was engaged in selling illegal drugs. Specifically at issue on appeal is the sale of products containing cannabidiol, also known as CBD.

Archer and Russell were both first charged in Washington County Court with possession of CBD with the intent to manufacture, deliver, or dispense under Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2018) and conspiracy under Neb. Rev. Stat. § 28-202 (Cum. Supp. 2018). A preliminary hearing was held in March 2018.

At the preliminary hearing, a member of law enforcement testified that he purchased from Archer and Russell items advertised as containing CBD oil. Following that hearing, the county court found sufficient probable cause to bind Archer and Russell over to district court. Accordingly, an information was filed in the district court charging the same counts.

Archer and Russell then filed pleas in abatement, and in June 2018, the district court dismissed all of the counts. According to the State's application for leave to docket an appeal, an order explaining the court's reasoning accompanied its decision. That reasoning is not part of our record.

In July 2018, the county attorney refiled the criminal cases in county court, and a preliminary hearing was held in October. The laboratory technician who tested the CBD oil at issue testified that tetrahydrocannabinol, otherwise known as THC, and CBD had a similar chemical structure. The technician also indicated, in response to cross-examination, that his testing revealed no THC in the CBD oil sold by Archer and Russell, and he further testified that his testing did not reveal whether the CBD in question was synthetically produced. The county court dismissed the charges, finding that the county attorney did not establish probable cause. Apparently no explanation of reasoning accompanied these dismissals.

The present charges were filed in November 2018. A preliminary hearing was held in May 2019. A clinical neuropsychologist at the University of Nebraska Medical Center testified at the preliminary hearing that the pharmacological effects of THC and CBD were not similar. In addition, the transcripts of proceedings from the prior cases were offered as exhibits. In July, the district court dismissed without prejudice all charges for failure of sufficient probable cause. No reasoning was given.

The State filed an application to docket appeals, taking exception to the district court's July 2019 dismissals.[1] The Court of Appeals granted those applications, and the exception proceedings were consolidated and moved to this court's docket.

## ASSIGNMENT OF ERROR

The State assigns that the district court erred in dismissing the charges against Archer and Russell.

## STANDARD OF REVIEW

[1] When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an

---

[1] See Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2018).

independent conclusion irrespective of the decision of the court below.[2]

## ANALYSIS

Archer and Russell were charged with possession of CBD with the intent to manufacture, deliver, or dispense under § 28-416(1) and conspiracy under § 28-202. The issue presented by this appeal is whether the district court erred when, following a preliminary hearing, it dismissed the charges against Archer and Russell.

*Legal Principles.*

Section 28-202(1) provides:

A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:

(a) He agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and

(b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

Section 28-416(1) provides that "[e]xcept as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance . . . ." "Controlled substance" is defined as "a drug, biological, substance, or immediate precursor in Schedules I through V of section 28-405."[3]

Neb. Rev. Stat. § 28-405(c) [Schedule I] (Cum. Supp. 2018) of the Uniform Controlled Substances Act lists the following as prohibited substances:

---

[2] *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002).

[3] See Neb. Rev. Stat. § 28-401(4) (Cum. Supp. 2018).

Any material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers, and salts of isomers, unless specifically excepted, whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation, and, for purposes of this subdivision only, isomer shall include the optical, position, and geometric isomers:

. . . .

(12) *Tetrahydrocannabinols, including, but not limited to, synthetic equivalents of the substances contained in the plant or in the resinous extractives of cannabis, sp. or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity*

. . . .

. . . .

(25) *Any material, compound, mixture, or preparation containing any quantity of synthetically produced cannabinoids* . . . . Since nomenclature of these synthetically produced cannabinoids is not internationally standardized and may continually evolve, these structures or compounds of these structures shall be included under this subdivision, regardless of their specific numerical designation of atomic positions covered, so long as it can be determined through a recognized method of scientific testing or analysis that the substance contains properties that fit within one or more of the following categories:

. . . .

(M) *Any nonnaturally occurring substance, chemical compound, mixture, or preparation, not specifically listed elsewhere in these schedules* and which is not approved for human consumption by the federal Food and Drug Administration, containing or constituting a cannabinoid receptor agonist as defined in section 28-401.

(Emphasis supplied.)

A preliminary hearing did not exist at common law.[4] A preliminary hearing is a creature of statute, and its functional purpose is stated in Neb. Rev. Stat. § 29-506 (Reissue 2016):

> If upon the whole examination, it shall appear that no offense has been committed or that there is no probable cause for holding the accused to answer for the offense, he shall be discharged; but if it shall appear that an offense has been committed and there is probable cause to believe that the person charged has committed the offense, the accused shall be committed to the jail of the county in which the same is to be tried, there to remain until he is discharged by due course of law . . . .

[2-4] In short, the purpose of a preliminary hearing is to ascertain whether a crime has been committed and whether there is probable cause to believe the accused committed it.[5] Its purpose is not a criminal prosecution or trial within the meaning of the Nebraska Constitution.[6] Nor is it a trial of the person charged in regard to his or her guilt or innocence.[7] Rather, if after a preliminary hearing the court finds that a crime has been committed and there is probable cause to show that the accused committed it, the effect of the hearing is to hold the accused for trial.[8]

*Did District Court Err?*

In this appeal, the State assigns that the district court erred in dismissing the charges against Archer and Russell following a preliminary hearing. The county attorney requests this court to provide a legal analysis, reason, and opinion providing direction of this issue for prosecuting attorneys, and further

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] See *id.*

asserts that sufficient evidence was presented to establish that probable cause existed.

As to the merits, the county attorney argues that sufficient evidence was presented to establish probable cause because items sold by Archer and Russell contained CBD, which is listed as a Schedule I substance under the Uniform Controlled Substances Act. The county attorney takes issue with Archer and Russell's expert's testimony that CBD did not have the same pharmacological effect as THC, calling it "irrelevant."[9]

Finally, at oral argument in this case, the county attorney indicated that because the district court failed to explain why the charges were lacking in probable cause, the county attorney was unsure how to proceed. The county attorney further indicated that the Legislature's passage of 2019 Neb. Laws, L.B. 657, otherwise known as the Nebraska Hemp Farming Act, and its impact upon such prosecutions, had not been addressed by this court.

As noted, the purpose of a preliminary hearing is to ascertain whether a crime has been committed and whether there is probable cause to believe the accused committed it. While certainly most preliminary hearings center on questions of fact related to the alleged crime, the preliminary hearing in this case was different in that its focus was on whether a crime was committed at all. As such, a prosecutor was required to show (1) possession and/or distribution (2) of a controlled substance. Only the second requirement—whether the CBD oil is a controlled substance—is at issue here.

In order to determine if a substance is a "controlled substance," one must examine the Uniform Controlled Substances Act. Before the district court, the record shows that both § 28-405(c)(12) and § 28-405(c)(25) were at issue.

We turn first to § 28-405(c)(12), which lists as a controlled substance THC and synthetic equivalents of THC, as well as any substances "with similar chemical structure and

---

[9] Brief for appellant at 6.

pharmacological activity" as THC. Archer and Russell concede the CBD in this case had a similar chemical structure as THC, but they argue that the prosecutor failed to show the CBD oil had "similar . . . pharmacological activity" to an illegal substance as set forth in § 28-405(c)(12) and that to the contrary, Archer and Russell's expert's testimony showed that it did not.

Our review of the record supports the contention of Archer and Russell that the CBD oil in question did not contain THC and did not have the same pharmacological effects as THC. Therefore, the State failed to establish that the CBD tested in this matter was a "controlled substance" under the Uniform Controlled Substances Act.

We turn next to whether the CBD was a synthetic equivalent to an illegal substance for purposes of § 28-405(c)(25). At issue here is whether Archer and Russell possessed or distributed "[a]ny material, compound, mixture, or preparation containing any quantity of synthetically produced cannabinoids . . . ."[10] The county attorney has proved there was cannabinoids, or CBD, in the CBD oil. But the record establishes that the county attorney failed to show the source of the CBD, i.e., failed to show that it was "synthetically produced." As such, the record presented by the State fails to establish that the CBD in question was a prohibited "controlled substance" under the Uniform Controlled Substances Act.

We finally turn to the county attorney's request, not specifically assigned on appeal,[11] that we provide direction on how to prosecute cases involving CBD. But these exception proceedings do not involve anything other than the State's failures of proof at the preliminary hearing, and do not implicate L.B. 657. We therefore decline the invitation to address the prosecution of cases involving CBD products in this opinion.

---

[10] See § 28-405(c)(25).

[11] See, e.g., *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Finally, we note that there is no requirement in either statute or case law for a district court to provide explanation for a decision to dismiss charges following a preliminary hearing, and thus to the extent the county attorney seeks a finding of error for the court's failure to do so, we find none.

## CONCLUSION

We find no error in the district court's dismissal of the informations filed against Archer and Russell, and thus, we overrule the State's exceptions.

Exceptions overruled.